# **EXHIBIT 1**

| | SUM-100 |
|---|---|

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CALIFORNIA STATE SENATE, a legislative branch of the State of California; BEN HUESO, an individual; ANA MOLINA-RODRIGUEZ, an individual; CLAUDIA LOPEZ, an individual, and DOES 1-20, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Dawn Hendon

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**01/14/2021** at 12:15:00 PM

Clerk of the Superior Court
By Taylor Crandall, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California, County of San Diego
330 W. Broadway
San Diego, CA 92101

**CASE NUMBER:** *(Número del Caso):*
37-2020-00042690-CU-WT-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Stacey Y. Mouton, 2150 Comstock St. #710754, San Diego, CA 92111

**DATE:** 01/14/2021
*(Fecha)*

Clerk, by *T. Crandall*, Deputy
*(Secretario)* *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:
   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

STACEY Y. MOUTON (SB# 324959)
Stacey@mouton.law
2150 Comstock St. #710754
San Diego, California 92111
Telephone: (760) 927-0647

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**11/20/2020** at 07:10:25 PM
Clerk of the Superior Court
By Keira McCray,Deputy Clerk

Attorney for Plaintiff
Dawn Hendon

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

CENTRAL DIVISION

| | |
|---|---|
| DAWN HENDON, <br><br> Plaintiff, <br><br> vs. <br><br> CALIFORNIA STATE SENATE, a legislative branch of the State of California; BEN HUESO, an individual; ANA MOLINA-RODRIGUEZ, an individual; CLAUDIA LOPEZ, an individual, and DOES 1-20, inclusive. <br><br> Defendants. | **CASE NO.:** 37-2020-00042690-CU-WT-CTL <br><br> **COMPLAINT FOR:** <br><br> 1) DISCRIMINATION, HARASSMENT, AND RETALIATION ON THE BASIS OF RACE; <br> 2) DISCRIMINATION, HARASSMENT, AND RETALIATION IN VIOLATION OF 42 U.S.C §1981; <br> 3) DISCRIMINATION, HARASSMENT, AND RETALIATION ON THE BASIS OF SEX; <br> 4) DISCRIMINATION, HARASSMENT, AND RETALIATION ON THE BASIS OF DISABILITY; <br> 5) HOSTILE WORK ENVIRONMENT; <br> 6) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY; <br> 7) FAILURE TO PREVENT DISCRIMINATION, HARASSMENT, AND RETALIATION; <br> 8) NEGLIGENT HIRING AND SUPERVISION |

- 1 -
COMPLAINT

Plaintiff DAWN HENDON ("Plaintiff" or "HENDON") complains as follows:

## INTRODUCTION

1. This is an action to enforce the right of fair and equal treatment—the right to basic human dignity—enshrined in the constitutions and laws of both the United States and California. Dawn Hendon was **THE FIRST** African-American hired to work at Defendant Senator Ben Hueso's office. And how did Senator Hueso's office treat their historic hire? By demanding she work in dangerous neighborhoods his other staff refused to enter. By forcing her to endure sexually harassing remarks from Senator Hueso. By bullying, disparaging, and harassing her to the point where she could no longer work. This is not just an action to vindicate the rights of one, but to root out the racism, sexism, hatred, and bigotry gripping Senator Hueso's office.

## NATURE OF THE ACTION

2. This is an employment discrimination case, brought pursuant to the provisions of the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq., as amended ("Title VII"); Americans With Disability Act Of 1990 42 U.S.C. §§ 12101 et seq.; and the California Fair Employment and Housing Act, Government Code §§12940, et seq. ("FEHA").

## THE PARTIES

3. Plaintiff is a resident of the State of California and was employed by Defendant California State Senate and Defendant Ben Hueso as a District Representative.

4. The California State Senate is a part of the legislative branch of the State of California and the employer of Plaintiff and each individual Defendant.

5. Plaintiff is informed and believes, and based thereon, alleges that Senator Hueso is and at all times mentioned herein, a resident of the State of California, a California State Senator, and Plaintiff's supervisor. Senator Hueso took all actions alleged herein in the course and scope of his employment with the Senate; or, alternatively, in his individual capacity.

6. Plaintiff is informed and believes, and based thereon, alleges that Defendant Ana Molina-Rodriguez is and at all times mentioned herein, a resident of the State of California,

Senator Hueso's Chief of Staff, and Plaintiff's supervisor. Molina-Rodriguez took all actions alleged herein in the course and scope of her employment with the Senate; or, alternatively, in her individual capacity

7. Plaintiff is informed and believes, and based thereon, alleges that Defendant Claudia Lopez has, from on or about early 2019, been a resident of the State of California, Senator Hueso's office District Director, and Plaintiff's supervisor. Lopez took all actions alleged herein in the course and scope of her employment with the Senate; or, alternatively, in her individual capacity

8. Plaintiff is unaware of the true names and capacities of the individual Defendants fictitiously designated as "DOES" 1 through 20, and therefore sues those Defendants by these fictitious names. Plaintiff will amend this Complaint when the true names and capacities of these factiously designated Defendants have been ascertained. Plaintiff is informed and believes, and thereon alleges, that "DOES" 1 through 20, are legally responsible in some manner for the events and happenings referenced that caused the injuries to Plaintiff for which Plaintiff now seeks damages.

9. Plaintiff is informed and believes, and thereon alleges, that Defendants were the agents, servants, employees of the other Defendants, and were acting within the scope, course and authority of their agency and or employment. Plaintiff is further informed, believes, and thereon alleges that each of the Defendants consented to, ratified, participated in, or authorized the acts of the remaining Defendants.

10. Plaintiff is informed and believes, and thereon alleges, that all Defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, conduct that is prohibited under California Government Code § 1240(i).

## JURISDICTION, VENUE, AND EXHAUSTION OF REMEDIES

11. Jurisdiction is proper in the Superior Court for the County of San Diego because it has general subject matter jurisdiction and no statutory exceptions to jurisdiction exist.

12. This Court has jurisdiction over Defendants as all are citizens of the State of California.

13. Venue is proper in the County of San Diego as a substantial part of the events and omissions giving rise to the claims occurred in this County.

14. Plaintiff has filed charged of discrimination with, and received right to sue letters from, the United States Equal Employment Opportunity Commission and California Department of Fair Housing and Employment. She has thus exhausted her administrative remedies prior to filing this suit.

## FACTS COMMON TO ALL CAUSES OF ACTION

15. In April 2018, Hendon began working as a District Representative at the California State Senate 40th district in Chula Vista for Senator Ben Hueso's office. Hendon was the first African American hired to work in Senator Hueso's office, and excelled in her position. Within the first three months of her employment, Defendants expressed confidence in Hendon's high performance, and even awarded Hendon a five percent pay increase. Hendon continued distinguishing herself as a strong performer—frequently working long hours and attending after-work meetings. Hendon fostered an environment dedicated to serving the needs of Senator Hueso's office, his constituents, and his staff. Unfortunately, as Hendon soon learned, Senator Hueso's office was a haven for bigotry and bullying.

16. Approximately two-weeks into Hendon's employment, during a work project *completely* unrelated to race, Senator Hueso's Chief-of-Staff Molina-Rodriquez revealed that "[she] had never hired any blacks because none ever applied." This deeply troubled Hendon for multiple reasons.

17. First, the comment was completely inappropriate and out-of-place. At no point could Hendon have predicted Molina-Rodriguez would unilaterally change the nature of this pre-scheduled meeting to focus on Hendon's race. Not only was Molina-Rodriguez's racially charged statement unwarranted, but it left Hendon feeling unwelcome and unsupported.

- 4 -
COMPLAINT

18. Second, Hendon was confounded as to how Molina-Rodriguez knew Hendon was the only African American who had ever applied. It seemed as though she truly believed she could deduce every applicant's race based solely on their name.

19. Third, Molina-Rodriguez's comment inferred that African Americans—rather than her own bigotry—were to blame for her failure to recruit diverse candidates.

20. And, finally, Hendon was deeply troubled to learn she was the *first* African American ever hired by Molina-Rodriguez—who claimed to have worked with Senator Hueso for nearly two decades. Hendon could not understand Molina-Rodriguez's fascination with Hendon's race, and was left unsettled by her decision to highlight Hendon's status as Senator Hueso's first and only African American hire.

21. Unfortunately, Molina-Rodriguez's harassment of Hendon continued and worsened as time passed. She often launched unwarranted and hypercritical attacks aim to disparage Hendon's work performance, holding Hendon to a higher standard than any other staff member. Molina-Rodriguez would then attempt to conceal her unlawful motives by alleging a shortcoming in Hendon's work where none existed. Molina-Rodriguez's unsupported perception that Hendon underperformed on an assignment became routine—resulting in Hendon feeling demeaned and humiliated.

22. For example, in or about early 2019, Senator Hueso was invited to a breakfast that was being held in recognition of Martin Luther King Jr. day. Senator Hueso decided that neither he nor Hendon would attend the breakfast. To Hendon's surprise, once she came into the office the next day, she was met by a visibly angry Molina-Rodriguez who proceeded to yell at her for not going to an event that, up until that point, she believed she did not have to attend.

23. Just three weeks later, Molina-Rodriguez asked Hendon to draft a report analyzing a piece of legislation. Hendon wanted to do well, and tried asking for further guidance from Molina-Rodriguez. Guidance she refused to give. Instead, Molina-Rodriguez told Hendon to ask an intern about the project. It was apparent that Molina-Rodriguez was happy to give instructions to non-African American intern, but refused to extend that same courtesy to Hendon.

24. Nevertheless, Hendon drafted and produced a strong report by furiously researching the legislation and reviewing similar reports submitted by other members of Senator Hueso's staff. Hendon thus completed and submitted the assignment as directed. However, to Hendon's surprise, Molina-Rodriguez immediately began harassing Hendon over the report. She sent text messages berating Hendon for allegedly omitting a critical opinion section in the document. Molina-Rodriguez then demanded Hendon come into Senator Hueso's Office on a day she was scheduled to be in the field to revise the report.

25. By this point, Defendants' cumulative actions had caused Hendon severe stress, to the point of causing chest pains. Hendon followed up with her doctor, who diagnosed her with Costochonitis.

26. Upon returning to the office, Hendon spoke with a (non-African American) seasoned staff member about his experience working with Molina-Rodriquez. Much to Hendon's surprise, the staff member—who had drafted several pieces of legislative analyses—told Hendon that Molina-Rodriguez never requested, let alone harassed him for failing to include, an opinions section. Hendon did not understand why she was subjected to a heightened standard, and thus could only conclude Molina-Rodriguez's actions were racially motivated.

27. Molina-Rodriguez never intended to help Hendon, and was interested only in intimidating, humiliating, and demeaning her. In addition to the racist comments and behavior described above, Molina-Rodriguez:

   a. Offered Hendon little to no training on ways to succeed in her role;
   b. Tossed Hendon's work directly from the printer into the trash, claiming it appeared to be "junk";
   c. Refused to give her *any* type of performance review, despite happily assessing the performance of other staff members;
   d. Stood outside of Hendon's new office—which Molina-Rodriguez previously occupied—demanding she be given back the office in an obvious attempt to intimidate Hendon; and

  e. Intentionally ignored Hendon's requests to attend Senator Hueso's inauguration, while openly discussing the then-upcoming event with other staff members in Hendon's presence to mock her.

28. Along with harboring a clear, deep hatred of African Americans, Molina-Rodriguez also mocked Hendon for her perceived disabilities. For example, in or about December 2018, Senator Hueso's staff all went to a restaurant to enjoy a meal together. While there, Hendon—who suffers from a medical condition requiring she use dentures—briefly removed her prosthetic teeth at the table. She then saw Molina-Rodriguez look at Hendon's co-worker before sneering in disgust at Hendon. Molina-Rodriguez's disdain for Hendon's disability was palpable.

29. Additionally, on at least three separate occasions through 2018 and 2019, Hendon informed Molina-Rodriguez that it was extremely difficult for Hendon to lock and unlock the sole entrance and exit to the office, as that door required Hendon to bend down in order to reach the locking mechanism. Hendon told Molina-Rodriguez that the door did not appear to comply with state and federal disability laws. Molina-Rodriguez dismissed Hendon's concerns outright—though she said she would look into the issue, the door was never changed.

30. Molina-Rodriguez was not the only racist, bigoted member of Senator Hueso's staff. In or about early 2019, Molina-Rodriguez hired Claudia Lopez as the District Director for Senator Hueso's office. And it was not long before Lopez joined Molina-Rodriguez's harassment of Hendon.

31. For example, Lopez asked Hendon to recruit volunteers for an upcoming Clean the Bay event. But, rather than sending her to the areas other staff-members canvassed, Lopez instead told Hendon to go door-to-door and deliver flyers in an extraordinarily dangerous part of San Diego. Hendon told both Lopez and Molina-Rodriguez that she was concerned about her safety. They dismissed her concerns outright. Hendon was only able to avoid the most-dangerous aspects of the assignment by recruiting from schools in that neighborhood—an option that existed all along, but neither Lopez nor Molina-Rodriguez was willing to suggest.

32. Although Hendon was ultimately able to avoid engaging in this potentially dangerous activity, Defendants' actions further alienated Hendon. Hendon was left to feel as if her life was not worthy of preserving; or, at the very least, not worthy of protecting from known potential dangers. Protection Senator Hueso's office happily provided her non-African American colleagues.

33. Lopez and Molina-Rodriguez often enjoyed harassing Hendon together. For example, in or about April 2019, Hendon noticed that events she entered into her e-mail calendar began to disappear. Hendon contacted IT, but they were unable to find what was causing the problem. After Hendon's wrongful discharge, she learned that Molina-Rodriguez and Lopez had access to and could change Hendon's calendar. It is clear that both would remove Hendon's calendar appointments as a means to further harass and isolate her.

34. Additionally, in or about August 2019, Hendon attended the Sandag Census Stakeholder meeting along with Senator Hueso. After several speakers presented, Hendon checked her phone during a break. She was shocked to find several missed calls from Molina-Rodriguez. Hendon called and sent text messages to Molina-Rodriguez, but received no response. Instead, Lopez called Hendon to say Molina-Rodriguez was demanding Hendon to return to the office. Hendon could not simply leave the meeting, but attempted to head to the office while on lunch break; quickly finishing her meal near her car before attempting to leave. Unfortunately, her car would not start, requiring Hendon to wait for campus security to provide a jump start. Hendon sent Molina-Rodriguez updates throughout the ordeal, but received nothing but negative comments in return. Hendon began to feel ill from both Molina-Rodriguez's abuse and her extended exposure to the elements. But when she told Molina-Rodriguez that she would need to take the rest of the afternoon off to recover from her ailment, Molina-Rodriguez waited hours before dismissively replying that "[she] will check with HR."

35. Hendon was not the only staff member targeted for the hellacious abuse meted out by Molina-Rodriguez and Lopez. On or about the summer of 2019, a new hire left Senator Hueso's office promptly at 5:00 PM. The following day, apparently upset by this perceived slight

- 8 -
COMPLAINT

to her authority, Molina-Rodriguez—knowing the office door could only be unlocked from the outside—intentionally locked Hendon's co-worker inside the office, stating "That will teach him not to walk out and leave us next time!"

36. While Senator Hueso's staff looked on and laughed, Hendon sadly watched as the new hire's face turned red as he held back tears. Scared of what Molina-Rodriguez would do to her if she interceded, she waited until Molina-Rodriguez unlocked the door. Once the door opened, Hendon walked the new hire to his car and attempted to comfort him. All the new hire could say was that he did not know, and had he been informed he would have waited for everyone. Molina-Rodriguez's horrible treatment of this poor person broke Hendon's heart.

37. In or about December 2018, Hendon also watched Molina-Rodriguez harassed a female staff member on the basis of sex, encouraging the staff to taunt Jane Doe and call her "princess" since "she wants a new title!" Hendon refused to participate. As before, the look of embarrassment on Jane Doe's face broke Hendon's heart. Hendon felt extremely uncomfortable and offended that Molina-Rodriguez would sexually harass a female employee and then encourage others to do the same. But Senator Hueso's office was a hotbed of sexual discrimination and harassment, as Hendon would soon learn first-hand.

38. Indeed, Senator Hueso was just as abusive and harassing as his long-time Chief-of-Staff. She raised several of the issues noted above to the Senator, who consistently refused to act. Instead, he hurled a constant barrage of inappropriate comments about Hendon's appearance towards her. This harassment culminated one, unfortunate night when Hendon was driving Senator Hueso home from an event at the Estancia Hotel in La Jolla. While driving south on Interstate 5, Senator Hueso began to discuss UCLA's library, stating, "the library is so big you can rape girls in there. They can scream and no one can hear it."

39. Hendon less than five inches from Senator Hueso that evening. Hendon was offended and, frankly, afraid for her safety given the Senator's history of harassing her and commenting on her appearance. She requested that Senator Hueso refrain from continuing that conversation, and they drove on in silence.

40. Demoralized by Defendants' mistreatment, Hendon reasonably concluded her working conditions were intolerable—as would any reasonable African American woman would in her circumstances—and she was thus constructively terminated in or about September 2019.

## FIRST CAUSE OF ACTION

## DISCRIMINATION, HARASSMENT, AND RETALIATION

## ON THE BASIS OF RACE IN VIOLATION OF FEHA AND TITLE VII

**(Against All Defendants)**

41. Hendon restates and incorporates by reference each and every allegation in all preceding paragraphs as though fully set forth herein.

42. Defendants are employers as defined by applicable law or, alternatively, individually liable under FEHA and Title VII.

43. FEHA and Title VII both make it unlawful for an employer to discriminate, harass, or retaliate against an employee on the basis of her race.

44. Hendon is a member of a protected group based on her race (African-American).

45. In violation of both FEHA and Title VII, Defendants discriminated, harassed, and/or retaliated against Hendon because of her race.

46. As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Hendon has incurred compensatory damages, including lost earnings and other economic damages; suffered emotional distress; and has generally been damaged in an amount to be ascertained at trial.

47. Defendants' discrimination, harassment, and/or retaliation was done intentionally, in a malicious, fraudulent, and oppressive manner, entitling Hendon to punitive damages.

48. Hendon has incurred and continues to incur legal expenses and attorneys' fees, which she is entitled to recover in an amount according to proof under applicable law.

## SECOND CAUSE OF ACTION

## DISCRIMINATION, HARASSMENT, AND RETALIATION

## IN VIOLATION OF 42 U.S.C §1981

**(Against Individual Defendants Hueso, Molina-Rodriguez, Lopez, and Does 1-20)**

49. Hendon restates and incorporates by reference each and every allegation in all preceding paragraphs as though fully set forth herein.

50. 42 U.S.C §1981 binds the individual defendants, requiring them to refrain from discriminating against any employee on the basis of race.

51. Individual Defendants Hueso, Molian-Rodriguez, and Lopez intentionally discriminated, harassed, and/or retaliated against Hendon on the basis of Hendon's race.

52. As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Hendon has incurred compensatory damages, including lost earnings and other economic damages; suffered emotional distress; and has generally been damaged in an amount to be ascertained at trial.

53. Defendants' discrimination, harassment, and/or retaliation was done intentionally, in a malicious, fraudulent, and oppressive manner, entitling Hendon to punitive damages.

54. Hendon has incurred and continues to incur legal expenses and attorneys' fees, which she is entitled to recover in an amount according to proof under applicable law.

## THIRD CAUSE OF ACTION

**DISCRIMINATION, HARASSMENT, AND RETALIATION**

**ON THE BASIS OF SEX IN VIOLATION OF FEHA AND TITLE VII**

**(Against All Defendants)**

55. Hendon restates and incorporates by reference each and every allegation in all preceding paragraphs as though fully set forth herein.

56. Defendants are employers as defined by applicable law or, alternatively, individually liable under FEHA and Title VII.

57. FEHA and Title VII both make it unlawful for an employer to discriminate, harass, or retaliate against an employee on the basis of her sex, including by subjecting her to sexual harassment.

58. Hendon is a member of a protected group based on her sex (female).

59. In violation of both FEHA and Title VII, Defendants discriminated, harassed, and/or retaliated against Hendon because of her sex.

60. As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Hendon has incurred compensatory damages, including lost earnings and other economic damages; suffered emotional distress; and has generally been damaged in an amount to be ascertained at trial.

61. Defendants' discrimination, harassment, and/or retaliation was done intentionally, in a malicious, fraudulent, and oppressive manner, entitling Hendon to punitive damages.

62. Hendon has incurred and continues to incur legal expenses and attorneys' fees, which she is entitled to recover in an amount according to proof under applicable law.

## FOURTH CAUSE OF ACTION

## DISCRIMINATION, HARASSMENT, AND RETALIATION

## ON THE BASIS OF DISABILITY IN VIOLATION OF FEHA AND THE ADA

**(Against All Defendants)**

63. Hendon restates and incorporates by reference each and every allegation in all preceding paragraphs as though fully set forth herein.

64. Defendants are employers as defined by applicable law or, alternatively, individually liable under FEHA and the ADA.

65. FEHA and the ADA both make it unlawful for an employer to discriminate, harass, or retaliate against an employee on the basis of her perceived or actual disability.

66. In violation of both FEHA and the ADA, Defendants discriminated, harassed, and/or retaliated against Hendon because of her perceived or actual disability.

67. As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Hendon has incurred compensatory damages, including lost earnings and other economic damages; suffered emotional distress; and has generally been damaged in an amount to be ascertained at trial.

68. Defendants' discrimination, harassment, and/or retaliation was done intentionally, in a malicious, fraudulent, and oppressive manner, entitling Hendon to punitive damages.

69. Hendon has incurred and continues to incur legal expenses and attorneys' fees, which she is entitled to recover in an amount according to proof under applicable law.

## FIFTH CAUSE OF ACTION

## HOSTILE WORK ENVIRONMENT IN VIOLATION OF

## FEHA, TITLE VII, AND THE ADA

### (Against All Defendants)

70. Hendon restates and incorporates by reference each and every allegation in all preceding paragraphs as though fully set forth herein.

71. Defendants are employers as defined by applicable law or, alternatively, individually liable under FEHA, Title VII, and the ADA.

72. FEHA, Title VII, and the ADA both make it unlawful for an employer to subject an employee to a hostile working environment because of their race, sex, and/or perceived or actual disability.

73. In violation of FEHA, Title VII, and the ADA, Defendants subjected Hendon to a hostile working environment because of her race (African American), sex (female), and/or perceived or actual disability by permeating Hendon's workplace with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

74. As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Hendon has incurred compensatory damages, including lost earnings and other economic damages; suffered emotional distress; and has generally been damaged in an amount to be ascertained at trial.

75. Defendants' discrimination was done intentionally, in a malicious, fraudulent, and oppressive manner, entitling Hendon to punitive damages.

76. Hendon has incurred and continues to incur legal expenses and attorneys' fees, which she is entitled to recover in an amount according to proof under applicable law.

## SIXTH CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

**(Against All Defendants)**

77. Hendon restates and incorporates by reference each and every allegation in all preceding paragraphs as though fully set forth herein.

78. The above-described conduct of Defendants, and each of them, was against the public policy of the State of California as evinced by its enactment of FEHA.

79. The Defendants, and each of them, either intentionally created and/or knowingly permitted working conditions that were so intolerable or aggravated that a reasonable employer would have realized that a reasonable person in Hendon's position would be compelled to resign.

80. By subjecting Hendon to a working environment permeated with animus against African Americans, women, and the disabled, the Defendants, and each of them, constructively terminated Hendon in violation of public policy.

81. As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Hendon has incurred compensatory damages, including lost earnings and other economic damages; suffered emotional distress; and has generally been damaged in an amount to be ascertained at trial.

82. Defendants' discrimination was done intentionally, in a malicious, fraudulent, and oppressive manner, entitling Hendon to punitive damages.

83. Hendon has incurred and continues to incur legal expenses and attorneys' fees, which she is entitled to recover in an amount according to proof under applicable law.

## SEVENTH CAUSE OF ACTION

### FAILURE TO PREVENT DISCRIMINATION HARASSMENT AND RETALIATION

### IN VIOLATION OF FEHA

**(Against All Defendants)**

84. Hendon restates and incorporates by reference each and every allegation in all preceding paragraphs as though fully set forth herein.

85. Under FEHA, Defendants have a duty to prevent unlawful harassment and discrimination, including retaliation. Defendants knew or should have known about the retaliation based on the protected complaints of Plaintiff as set forth above.

86. During the course of Hendon's employment, Defendants failed to prevent employees from engaging in intentional actions that resulted in Hendon being treated less favorably because of her protected statuses (e.g., her race, sex, perceived or actual disability, and/or good faith complaints).

87. During the course of Hendon's employment, Defendants failed to prevent their employees from engaging in unjustified employment practices against Hendon because of her protected statuses (e.g., her race, sex, perceived or actual disability, and/or good faith complaints).

88. During the course of Hedon's employment, Defendants failed to prevent a pattern and practice by their employees of intentional discrimination and harassment on the bases of Hendon's protected statuses (e.g., her race, sex, perceived or actual disability, and/or good faith complaints).

89. Plaintiff believes, and on that basis alleges, that her race, sex, perceived or actual disability, good faith complaints, and/or other protected statuses or protected activities were substantial motivating factors in Defendants discrimination and retaliation against her.

90. As a direct and proximate result of the acts of Defendants, and each of them, as alleged above, Hendon has incurred compensatory damages, including lost earnings and other economic damages; suffered emotional distress; and has generally been damaged in an amount to be ascertained at trial.

91. Defendants acts were done intentionally, in a malicious, fraudulent, and oppressive manner, entitling Hendon to punitive damages.

92. Hendon has incurred and continues to incur legal expenses and attorneys' fees, which she is entitled to recover in an amount according to proof under applicable law.

## EIGHTH CAUSE OF ACTION

## NEGLIGENT HIRING AND SUPERVISION

### (Against Defendant California State Senate and Does 1-20)

93. Hendon restates and incorporates by reference each and every allegation in all preceding paragraphs as though fully set forth herein.

94. Defendants owed a duty of care to Hendon to appoint, hire, retain, and supervise persons who would not engage in retaliatory, harassing, or discriminatory conduct.

95. Defendants owed a duty of care to Hendon not to retain managers or employees who would discriminate against, harass, or retaliate against employees for engaging in protected activities.

96. Defendants owed a duty of care to Hendon to supervise their managers and employees closely to ensure that they would refrain from harassing and retaliating against plaintiff.

97. Defendants breached these duties. As a direct and proximate result Defendants, and each of them, as alleged above, Hendon has incurred compensatory damages, including lost earnings and other economic damages; suffered emotional distress; and has generally been damaged in an amount to be ascertained at trial.

98. Hendon has incurred and continues to incur legal expenses and attorneys' fees, which she is entitled to recover in an amount according to proof under applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Hendon pay for judgment against Defendants, and each of them, as follows:

1. For nominal, actual, and compensatory damages;
2. For special and/or non-economic damages in an amount according to proof;
3. For punitive and/or exemplary damages in an amount according to proof;
4. For liquidated damages in an additional amount equal to the entire award of other damages;

5. For attorneys' fees pursuant to applicable laws;

6. For costs of suit incurred herein;

7. For pre-judgment interest to the extent allowed by law;

8. For post-judgment interest to the extent allowed by law;

9. For declaratory relief declaring that Defendants committed the unlawful practices alleged herein;

10. For injunctive relief restraining Defendants from committing any similar future unlawful employment practices and implementing practices to deter or discourage similar future unlawful practices; and

11. For such other and further relief as the Court deems just and proper.

DATED: November 20, 2020                    STACEY Y. MOUTON

By: /s/ Stacey Y. Mouton
STACEY MOUTON
2150 Comstock #710754
San Diego, California 92111
Telephone: (760) 927-0647

Attorney for Plaintiff
DAWN HENDON

## DEMAND FOR JURY TRIAL

Plaintiff Dawn Hendon demands a trial by jury of all issues so triable in this action.

DATED: November 20, 2020                    STACEY Y. MOUTON


By: */s/ Stacey Y. Mouton*
　　STACEY MOUTON
　　2150 Comstock #710754
　　San Diego, California 92111
　　Telephone: (760) 927-0647

Attorney for Plaintiff
DAWN HENDON