1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAWN HENDON,<br><br>                                Plaintiff,<br><br>      v.<br><br>CALIFORNIA STATE SENATE, *et al*.,<br><br>                                Defendants. | Case No. 21-cv-00505-BAS-MDD<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION TO SEVER AND REMAND (ECF No. 4); AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND STRIKE (ECF No. 3)** |

　　　Plaintiff Dawn Hendon commenced this employment discrimination action against Defendants California State Senate, California State Senator Ben Hueso, Ana Molina-Rodriguez, and Claudia Lopez.  (First Am. Compl. ("FAC"), ECF No. 1-5.)  Before the Court are Hendon's Motion to Sever and Remand (ECF No. 4) and Defendants' Motion to Dismiss and Strike (ECF No. 3).  The Court finds these motions suitable for determination on the papers submitted and without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).  For the following reasons, the Court **DENIES** Hendon's Motion to Sever and

Remand and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss and Strike.

## BACKGROUND

### I.    FACTUAL ALLEGATIONS[1]

In April 2018, Hendon began working as a District Representative for the California State Senate at Senator Hueso's office in Chula Vista.  (FAC ¶ 14.)  As a District Representative, Hendon was supervised by Senator Hueso and his Chief of Staff Molina-Rodriguez.  (*Id*. ¶¶ 5, 6.)

Approximately two weeks into Hendon's employment, during a work project unrelated to race, Molina-Rodriguez told Hendon that "she had never hired any blacks because none [had] ever applied."  (FAC ¶ 15.)  Hendon was unsettled by Molina-Rodriguez's decision to highlight Hendon's race.  (*Id.*)  She also found it "deeply troubl[ing] to learn she was the first African American ever hired by Molina-Rodriguez—who claimed to have worked with Senator Hueso for nearly two decades."  (*Id.* ¶ 19.)

Hendon claims Molina-Rodriguez's harassment "continued and worsened as time passed."  (FAC ¶ 20.)  "She often launched unwarranted and hypercritical attacks aim[ed] to disparage Hendon's work performance, holding Hendon to a higher standard than any other staff member."  (*Id.*)

Further, in early 2019, Molina-Rodriguez yelled at Hendon for not going to a Martin Luther King Jr. day breakfast event that Hendon believed she did not have to attend.  (FAC ¶ 21.)  Three weeks later, Molina-Rodriguez asked Hendon to draft a report analyzing a piece of legislation but refused to give Hendon guidance.  (*Id*. ¶ 22.)  Hendon was told to ask an intern, who was non-African American.  (*Id*.)  After Hendon submitted the report, Molina-Rodriguez sent text messages "berating Hendon for allegedly omitting

---

[1]  These facts are taken from the Complaint.  For Defendants' Motion to Dismiss, the Court accepts all of Hendon's factual allegations as true.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

a critical opinion section in the document" and demanded Hendon come into the office on a day she was scheduled to be in the field to revise the report. (*Id*. ¶ 23.)

At this point, Molina-Rodriguez's actions had caused Hendon severe stress. (FAC ¶ 24.) Upon returning to the office, Hendon spoke with a non-African American, seasoned staff member who told Hendon that Molina-Rodriguez "never requested, let alone harassed him for failing to include, an opinions section" in a legislative report. (*Id*. ¶ 25.) Hendon believes she was being held to a higher standard due to her race. (*Id*.) Hendon alleges Molina-Rodriguez harbored a "deep hatred of African Americans" and engaged in additional activities to humiliate, intimidate, and demean Hendon. (*Id*. ¶¶ 26–27.)

In early 2019, Lopez became the office's District Director and allegedly joined Molina-Rodriguez in harassing Hendon as an additional supervisor. (FAC ¶¶ 7, 29.) Lopez asked Hendon to recruit volunteers for a Clean the Bay event and told Hendon to go door-to-door in a dangerous part of San Diego. (*Id*. ¶ 30.) Hendon expressed safety concerns to Lopez and Molina-Rodriguez, but her concerns were dismissed. (*Id*.)

In April 2019, Hendon noticed that events she entered into her e-mail calendar began to disappear. (FAC ¶ 32.) Molina-Rodriguez and Lopez had access to and could change Hendon's calendar. (*Id*.) Hendon claims "[i]t is clear that both would remove Hendon's calendar appointments as a means to further harass and isolate her." (*Id*.)

Hendon "raised several of the issues noted above" with Senator Hueso, and he consistently refused to act. (FAC ¶ 37.) In addition, Senator Hueso "hurled a constant barrage of inappropriate comments about Hendon's appearance towards her," and Hendon had "to endure sexually harassing remarks from Senator Hueso." (*Id*. ¶¶ 1, 37.) One night, while driving with Senator Hueso, he began to discuss a college library, stating: "the library is so big you can rape girls in there, they can scream and no one can hear it." (*Id*. ¶ 37.) Hendon was offended and "afraid for her safety given the Senator's history of harassing her and commenting on her appearance." (*Id*. ¶ 38.)

Hendon concluded her working conditions were intolerable and pleads she was constructively terminated around September 2019. (FAC ¶ 39.)

- 3 -

## II.   PROCEDURAL HISTORY

Hendon commenced this action on November 20, 2020, in the Superior Court of the State of California for the County of San Diego, alleging Defendants discriminated against her in her employment.  (ECF No. 1-2.)  On March 9, 2021, Hendon filed an Amended Complaint.  (ECF No. 1-5.)  Defendants removed this action on March 22, 2021.  (ECF No. 1.)

Hendon raises thirteen claims in her Complaint.  (FAC ¶¶ 40–129.)  Twelve of them are state law causes of action, predominantly for violation of California's Fair Employment and Housing Act, Cal. Gov't Code §§ 12940 et seq. ("FEHA").  Hendon also brings a claim for discrimination, harassment, and retaliation against Senator Hueso, Molina-Rodriguez, and Lopez in violation of 42 U.S.C. § 1981.

Hendon moves to sever and remand her state law claims pursuant to 28 U.S.C. §§ 1367(c) and 1447(c).  (Mot. to Remand, ECF No. 4.)  Hendon argues that the Court should decline to exercise supplemental jurisdiction over the state law claims because they substantially predominate over the Section 1981 claim that provides original jurisdiction.  (*Id.* 2:9–13.)  Defendants oppose.  (Remand Opp'n, ECF No. 7.)

Further, Defendants move to dismiss and strike portions of the Complaint under Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure.  (Mot. to Dismiss ("MTD"), ECF No. 3.)  Defendants move to dismiss Senator Hueso, Molina-Rodriguez, and Lopez ("Individual Defendants") entirely because Hendon: (a) fails to state claims upon which personal liability against supervisors is available; or (b) fails to support those personal liability claims with plausible facts.  (*Id.* 1:3–11.)  Defendants also move to dismiss Hendon's second, fourth, sixth, seventh, eighth, and thirteenth causes of action as to all Defendants on grounds that Hendon's complaint fails to allege plausible facts in support of those claims.  (*Id.* 1:11–13.)  Finally, Defendants move to strike part of Hendon's prayer for relief.  (*Id.* 2:16–28.)  Hendon filed a response to the motion.  (MTD Opp'n, ECF No. 5.)

**MOTION TO SEVER AND REMAND**

## I.      LEGAL STANDARD

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The federal supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

*Id.* § 1367(a).  Supplemental jurisdiction is mandatory unless prohibited by § 1367(b), or unless one of the exceptions in § 1367(c) applies.  Under § 1367(c), a district court may decline supplemental jurisdiction over a state claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c).  Underlying the § 1367(c) inquiry are considerations of judicial economy, convenience and fairness to litigants, and comity.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  "[I]f these are not present a federal court should hesitate to exercise jurisdiction over state law claims[.]"  *Id.*

## II.   ANALYSIS

### A.   Supplemental Jurisdiction

The Court has original jurisdiction over Hendon's 42 U.S.C. § 1981 cause of action on the basis of federal question jurisdiction.  The parties disagree on whether the Court should exercise supplemental jurisdiction over Hendon's twelve state law causes of action. The Court finds it appropriate to exercise supplemental jurisdiction over these claims.

Where original jurisdiction exists, a district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §§ 1367(a), 1331.  "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004).  Supplemental jurisdiction "applies with equal force to cases removed to federal court as to cases initially filed there; a removed case is necessarily one of which the district courts have original jurisdiction." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997).

Here, Hendon's state and federal employment causes of action arise from a common nucleus of operative facts—namely, the employment and supervision of Hendon by Defendants—such that Hendon would be expected to try them all in one judicial proceeding. *See Gibbs*, 383 U.S. at 725.  Her Complaint relies on the same facts to support both her state law employment claims and her federal discrimination claim under Section 1981.  (*See* FAC 5:1, ¶¶ 14–39.)  Hence, the Court has supplemental jurisdiction over Hendon's state law claims.

### B.   Substantially Predominates

Hendon argues that the Court should decline to exercise supplemental jurisdiction over her state law claims because they substantially predominate over her Section 1981 claim under § 1367(c)(2). (Mot. to Remand 4:20–25.)  The Court disagrees.

Where supplemental jurisdiction exists, the district court may decline to exercise it in certain circumstances. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). Relevant here, a court may decline to exercise jurisdiction over a supplemental state law claim if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c). State claims substantially predominate over federal claims when they constitute the "real body of a case, to which the federal claim is only an appendage." *Gibbs*, 383 U.S. at 727. In making this determination, federal courts typically consider whether the proof required, scope of issues raised, or comprehensiveness of remedy sought warrant resolution by a state court. *Id*. at 727–28.

Hendon contends her state law claims substantially predominate over her federal claim because resolution of Hendon's federal claim depends on different facts, standards, and evidence than her state claims. (Mot. to Remand 4:4–6.) The Court is unconvinced. Hendon draws on many of the same incidents of Defendants' allegedly discriminatory and harassing behavior to support her federal and state claims. At a minimum, there is an overlap of facts needed to prove Hendon's first, second, and seventh causes of action for employment discrimination or harassment on the basis of race. Many of these same facts are also relevant to proving Hendon's other causes of action, such as hostile work environment. As such, the scope of issues raised and evidence required to prove Hendon's claims would largely overlap for many of Hendon's claims, including her Section 1981 claim.

Hendon also argues that the proof of discriminatory animus against women and the disabled is irrelevant to her Section 1981 racial discrimination claim. (Reply 6:1–2.) The Court agrees; however, the difference in proof for those causes of action does not mean the federal claim is only an appendage to the real body of the case. *See Gibbs*, 383 U.S. at 727.

In addition, Hendon offers a quantitative argument as to why the state law claims substantially predominate. (Mot. to Remand 4:2–3.) She points out that her twelve state

law claims outnumber the single federal claim.  However, "[w]hether state law claims substantially predominate over federal claims is a qualitative—not quantitative—inquiry . . . [and] [t]he mere fact that a plaintiff's state claims outnumber [her] federal claims, without more, is insufficient to satisfy the 'substantially predominate' standard." *Navarro v. City of Fontana*, No. EDCV 09-1525-VAP (DTBx), 2010 WL 11459998, at *3 (C.D. Cal. Jan. 6, 2010).  Accordingly, this argument is unpersuasive.

Moreover, Defendants draw the Court's attention to the interests underlying the § 1367(c) inquiry of judicial economy, convenience, and fairness to litigants.  (Remand Opp'n 1:4–11.)  "[I]f these are not present a federal court should hesitate to exercise jurisdiction over state law claims[.]" *Gibbs*, 383 U.S. at 726.  Here, resolution of Hendon's Section 1981 claim depends on many of the same facts and issues as her state law claims. The interests of consistency and judicial economy weigh in favor of retaining supplemental jurisdiction over the state claims.

Overall, the Court finds Hendon's state law claims do not substantially predominate, and there are not reasons for the Court to decline supplemental jurisdiction.  Accordingly, the Court exercises supplemental jurisdiction over Hendon's state law claims and denies Hendon's Motion to Sever and Remand.

## MOTION TO DISMISS AND STRIKE

### I.   LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

- 8 -

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Although the court accepts plaintiff's allegations as true, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## II.   ANALYSIS

Defendants move to dismiss Hendon's FEHA harassment, aiding and abetting, negligent hiring, and Section 1981 claims. The Court first considers the state law claims and then addresses the Section 1981 claim.

### A.   FEHA Claims

Defendants move to dismiss Hendon's second, fourth, sixth, and eighth causes of action for failure to state a claim against the Individual Defendants for harassment in violation of FEHA. (MTD 1:17–21.)

Under FEHA, it is an unlawful employment practice for an employer to harass an employee because of race, disability, or sex. Cal. Gov't Code § 12940(j)(1). To prevail on a harassment claim, the plaintiff "must show that (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) defendants are

- 9 -

liable for the harassment." *Ortiz v. Dameron Hosp. Assn.*, 37 Cal. App. 5th 568, 581 (2019) (citing *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 876 (2010)).

"[A]n employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of [the protected class]." *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 462 (2005). A single incident of harassing conduct may be enough "if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive working environment." *Ortiz*, 37 Cal. App. 5th at 582 (quoting Cal. Gov't Code § 12923(b)). "The plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that she was actually offended." *Hope v. Cal. Youth Auth.*, 134 Cal. App. 4th 577, 588 (2005) (alterations omitted) (quoting *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 609–10 (1989)).

Employees can be held personally liable for harassing other employees. Cal. Gov't Code § 12940(j)(3). Further, an employer is strictly liable for all acts of harassment by a supervisor. *State Dept. of Health Services v. Superior Court*, 31 Cal. 4th 1026, 1042 (2003).

### 1. Harassment on the Basis of Race

Defendants move to dismiss Hendon's second cause of action (FAC ¶¶ 47–54), which alleges harassment on the basis of race against the Individual Defendants in violation of FEHA. The Court addresses each Defendant in turn.

### i. Molina-Rodriguez

Hendon pleads enough facts to state a plausible harassment on the basis of race claim against Molina-Rodriguez. Approximately two weeks into Hendon's employment, during a work project unrelated to race, Molina-Rodriguez said that "she had never hired any blacks because none ever applied." (FAC ¶ 15.) In early 2019, Molina-Rodriguez yelled

at Hendon for not going to a Martin Luther King Jr. day breakfast event that Hendon believed she did not have to attend. (*Id.* ¶ 21.) Three weeks later, Molina-Rodriguez asked Hendon to draft a report analyzing a piece of legislation, but refused to give Hendon guidance. (*Id.* ¶ 22.) Hendon was told to ask an intern, who was non-African American, for help. (*Id.*) After Hendon submitted the report, Molina-Rodriguez sent text messages berating Hendon for omitting an opinion section and demanded Hendon come into the office on a day she was scheduled to be in the field to revise the report. (*Id.* ¶ 23.) Hendon spoke with a non-African American, seasoned staff member who told Hendon that Molina-Rodriguez never requested or harassed him for failing to include an opinions section. (*Id.* ¶ 25.) Molina-Rodriguez also "[t]ossed Hendon's work directly from the printer into the trash, claiming it appeared to be 'junk.'" (*Id.* ¶ 26.) Further, Molina-Rodriguez allegedly harbored a "deep hatred of African Americans" and "often launched unwarranted and hypercritical attacks aim[ed] to disparage Hendon's work performance, holding Hendon to a higher standard than any other staff member." (*Id.* ¶¶ 20, 27.)

Accepting these allegations true, it is plausible that Hendon was harassed by Molina-Rodriguez on the basis of her race. Hence, Defendants' request to dismiss the second cause of action as to Molina-Rodriguez is denied.

### ii.    Senator Hueso

Hendon does not plead enough facts to state a plausible harassment on the basis of race claim against Senator Hueso. Hendon pleads that Senator Hueso made inappropriate comments about her appearance and "sexually harassing remarks," but she does not allege these comments were based on her race. (FAC ¶¶ 1, 37.) Although the Court accepts Hendon's allegations as true, it is not proper for the Court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged." *See Assoc. Gen. Contractors*, 459 U.S. at 526. The Court therefore dismisses Hendon's second cause of action against Senator Hueso with leave to amend.

### iii.     Lopez

Hendon likewise does not plead enough facts to state a plausible claim for harassment on the basis of race against Lopez.  Hendon alleges Lopez told Hendon to go door-to-door in a dangerous part of San Diego as part of a work assignment, yet Hendon's non-African American colleagues did not receive this assignment.  (FAC ¶¶ 30–31.)  Defendants argue this allegation cannot support a harassment claim because under California law, "necessary personnel management actions" are "considered discrimination rather than harassment."  (MTD 11:19–21.)

The Court agrees this job assignment allegation is not enough to state a harassment claim against Lopez.  "Harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.  Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." *See Janken*, 46 Cal. App. 4th at 62–63.  Thus, a job assignment "may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment." *Id.* at 65.  That distinction applies here.  Hendon's job assignment allegation does not support a harassment claim against Lopez because Hendon does not allege facts showing this conduct was outside of Lopez's necessary job performance as a supervisor.

Further, Hendon alleges she "noticed that events she entered into her e-mail calendar began to disappear" around April 2019.  (FAC ¶ 32.)  She alleges Lopez "had access to and could change Hendon's calendar," but does not affirmatively allege Lopez did so.  (*See id.* (claiming it "is clear" that Lopez "would remove" appointments as a means "to further harass and isolate" Hendon).)  This qualified allegation is insufficient to plausibly state Lopez harassed Hendon on account of her race.

Accordingly, Hendon does not state a plausible state law racial harassment claim against Lopez.  The Court dismisses Lopez from Hendon's second claim with leave to amend.

- 12 -

21cv0505

1

### iv.    California Senate[2]

2       Defendant California Senate is the employer of the Individual Defendants.  Because

3  the Court concludes Hendon states a racial harassment claim against Molina-Rodriguez,

4  the Court denies Defendants' request to dismiss Hendon's second claim against the

5  California Senate.  *See State Dep't of Health Servs.*, 31 Cal. 4th at 1034 (providing "an

6  employer is strictly liable under the FEHA for [unlawful] harassment by a supervisor").

7               ### 2.    Harassment on the Basis of Sex

8       Defendants move to dismiss Hendon's fourth cause of action, which alleges

9  harassment on the basis of sex against the California Senate and Senator Hueso in violation

10 of FEHA (FAC ¶¶ 62–69).  "It is an unlawful employment practice . . . [f]or an employer .

11 . . or [coworker] . . . because of sex . . . to harass an employee."  Cal. Gov't Code §

12 12940(j)(1); *see also id.* § 12940(j)(3).

13      Hendon's harassment on the basis of sex cause of action is plausible.  Hendon pleads

14 that while driving one night with Senator Hueso, he stated: "[that] library is so big you can

15 rape girls in there, they can scream and no one can hear it."  (FAC ¶ 37.)  Defendants argue

16 that comment "could easily be interpreted as an expression of concern for the safety of

17 individuals using the library."  (MTD 9:17–21.)  But that construction is improper under

18 Rule 12(b)(6).  The Court must construe Hendon's allegations in her favor, not against her.

19 *See Cahill*, 80 F.3d at 337–38.

20      Hendon also pleads that Senator Hueso "hurled a constant barrage of inappropriate

21 comments about Hendon's appearance towards her," and she had to "endure sexually

22 harassing remarks" from him.  (FAC ¶¶ 1, 37.)  Defendants argue Hendon does not

23 elaborate on the content of those comments.  (MTD 9:9–11.)  However, her Complaint

24 need not contain detailed factual allegations; rather, it must plead "enough facts to state a

25

26

27       [2]  Defendants' Notice of Motion to Dismiss states they are seeking to dismiss certain causes of
action as to "all Defendants," but their arguments are tailored to only "the Individual Defendants."  *See*
(MTD Notice 1:11–13; 1:17–21.)  To avoid any confusion, the Court also addresses the entity defendant—
California Senate.

28

claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Combined with the incident above, sexually harassing remarks and "a constant barrage of inappropriate comments about Hendon's appearance" could be "severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of [Hendon's sex]."  *See Miller*, 36 Cal. 4th at 462.  The Court finds the fourth cause of action for sexual harassment under FEHA against Senator Hueso is plausible.  And this claim is likewise plausible against the California Senate because Senator Hueso supervised Hendon.  Defendants' motion to dismiss as to Hendon's fourth cause of action is therefore denied.

### 3.    Harassment on the Basis of Disability

Defendants move to dismiss Hendon's sixth cause of action (FAC ¶¶ 76–82), which alleges harassment on the basis of disability against all Defendants in violation of FEHA. It is an unlawful employment practice for an employer or coworker to harass an employee because of a "physical disability, mental disability," or "medical condition."  Cal. Gov't Code § 12940(j)(1); *see also see also id.* § 12940(j)(3).

Hendon does not state a plausible claim for harassment on the basis of disability against Defendants.  Hendon does not identify a disability but alleges she "suffers from a medical condition requiring she use dentures."  (FAC ¶ 27.)  Further, she provides one example where Molina-Rodriguez allegedly "sneered in disgust" when Hendon removed her prosthetic teeth at a restaurant.  (*Id.*)  Even though a single incident can support a harassment claim, Hendon must still plead facts showing the "conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee."  *See Hope*, 134 Cal. App. 4th at 588.  Neither this allegation nor Hendon's allegations concerning a door lock (*see* FAC ¶ 28) satisfy this standard and the remaining elements of a disability harassment claim.  Thus, the Court grants Defendants' request to dismiss the sixth cause of action with leave to amend.

21cv0505

### 4.    Hostile Work Environment

Defendants move to dismiss Hendon's eighth cause of action, which alleges all Defendants subjected Hendon to a hostile work environment in violation of FEHA.  This cause of action is duplicative of Hendon's individual FEHA harassment claims.  (*See* FAC ¶¶ 47–54, 62–69, 76–82, 89–95.)  *See, e.g.*, *Ortiz*, 37 Cal. App. 5th at 581 (analyzing the plaintiff's "harassment/hostile work environment cause of action"); *accord Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 462 & n.6 (2005).  Therefore, the Court grants Defendants' request to dismiss this claim with leave to amend to the same extent the Court has dismissed Hendon's second and sixth causes of action.

### 5.    Aiding and Abetting

Defendants move to dismiss Hendon's ninth cause of action against Senator Hueso, Molina-Rodriguez, and Lopez for aiding and abetting harassment in violation of FEHA. Defendants argue that aiding and abetting claims are not available against the Individual Defendants because they are all supervisors who were employed by the California Senate, and aiding and abetting claims under FEHA are only intended to reach persons outside of the employer's organization.  (MTD 13:6–16.)

However, a supervisor may be held personally liable for aiding and abetting harassment.  "If a supervisor aids and abets [prohibited] harassment of an employee, the supervisor is personally liable for money damages."  *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1331 (1996).  "A supervisor who, without more, fails to take action to prevent [prohibited] harassment of an employee is not personally liable as an aider and abettor." *Id*.

The Court concluded above that Hendon states a claim for FEHA harassment based on sex against Senator Hueso and based on race against Molina-Rodriguez.  The question, then, is whether Hendon pleads facts showing the other Individual Defendants aided and abetted this conduct.  She does not.  Hendon argues that Senator Hueso is liable for aiding and abetting harassment because of his inaction.  (Opp'n 13:9–14.)  She alleges "she raised several of the issues to the Senator, who consistently refused to act."  (FAC ¶ 37.)

However, Senator Hueso cannot be held personally liable as an aider and abettor of harassment based on his alleged inaction. *See Fiol*, 50 Cal. App. 4th at 1331. And beyond the allegations against Lopez discussed above, which the Court concluded did not support a racial harassment claim, the Complaint lacks plausible factual allegations concerning Lopez aiding and abetting Molina-Rodriguez's racial harassment. Likewise, the Complaint does not include allegations demonstrating Molina-Rodriguez aided and abetted Senator Hueso's alleged sexual harassment of Hendon. Hence, the Court grants Defendants' request to dismiss Hendon's ninth cause of action with leave to amend.

### B. Negligent Hiring, Supervision, and Retention

Defendants move to dismiss Hendon's thirteenth claim for negligent hiring, supervision, and retention against the California Senate. Hendon alleges the California Senate is vicariously liable for any negligence of its employees, including the negligent hiring, supervision, and retention of the Individual Defendants in violation of California Government Code section 815.2(a). (FAC ¶ 124.) Defendants argue Hendon: (1) cannot bring a directly liability claim against the California Senate, and (2) pleads insufficient facts for a vicarious liability claim because the harassment did not arise in the scope of the alleged harassers' employment. (MTD 13:17–14:11; Reply to MTD 11:1–16.)

"In California, a governmental entity can only be sued in tort pursuant to an authorizing statute or enactment." *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 840 (9th Cir. 1996) (citing *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 785 n.2 (1985); *Searcy v. Hemet Unified Sch. Dist.*, 177 Cal. App. 3d 792, 798 (1986)). Hendon's Complaint cites California Government Code section 815.2. (FAC ¶ 124.) Under this provision, a "public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code § 815.2. A vicarious liability claim that relies on a negligent hiring and supervision theory may be cognizable under this provision, but a direct

liability claim is not.  *See C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 873–75 (2012).

For a vicarious liability claim, the issue is whether one or more individual employees of the California Senate were negligent "in hiring, supervising and retaining [the individual(s)] who" unlawfully harassed Hendon.  *See William S. Hart*, 53 Cal. 4th at 879; *see also Brown v. USA Taekwondo*, 11 Cal. 5th 204, 216 (2021) (noting a relationship between "employers and employees" is an example of a special relationship giving rise "to an affirmative duty to protect").  To illustrate, if school administrators and supervisors are negligent in "hiring and retaining as well as supervising school staff," a vicarious liability claim can be brought under Government Code section 815.2 that makes the public entity vicariously liable for those supervisors' negligence.  *See William S. Hart*, 53 Cal. 4th at 876.

Defendants argue harassment is outside the scope of employment, so it cannot support a negligent hiring, retention, and supervision claim under section 815.2.  (MTD 13:17–18:11 (citing *de Villers v. Cty. of San Diego*, 156 Cal. App. 4th 238, 247–48 (2007)).)  This argument misses the mark.  For this claim, the "act or omission of an employee of the public entity within the scope of his employment" that forms the basis of the negligence claim is not the underlying wrongful conduct—*e.g.*, the unlawful harassment.  *See* Cal. Gov't Code § 815.2.  Rather, the actionable conduct is the breach in the duty of care with respect to hiring, supervising, or retaining the relevant employee(s).  *See S. Hart Union High*, 53 Cal. 4th at 873–75 (distinguishing *de Villers* and explaining that a vicarious liability claim was unworkable there because no special relationship existed between employees and the plaintiff—an employee's murdered spouse).  Defendants do not raise any other arguments in their moving papers for this vicarious liability claim.  And because the Court is unpersuaded by their scope of employment argument, the Court denies Defendants' request to dismiss Hendon's thirteenth claim.

1

### C.     Section 1981

2      In her seventh claim, Hendon alleges that the Individual Defendants intentionally

3  discriminated, harassed, or retaliated against Hendon on the basis of race in violation of 42

4  U.S.C. § 1981.  (FAC ¶ 85.)  Defendants argue Hendon's Section 1981 claim should be

5  dismissed because: (1) Hendon does not have any contractual interest to enforce, and (2)

6  her claim is factually deficient as to Lopez and Senator Hueso.

7      First, Defendants argue that Hendon is precluded from bringing her Section 1981

8  claim because public employment in California is held by statute and not by contract.

9  (MTD 11:26–12:1.)  The Ninth Circuit ruled on this issue in *Flores v. City of Westminster*,

10  873 F.3d 739, 752 (9th Circ. 2017), but Defendants argue *Flores* was wrongly decided.

11  (MTD 12 n.1.)

12      In *Flores*, three police officers sued their police chiefs and the City of Westminster

13  for discrimination and retaliation against them on the basis of race in violation of Section

14  1981.  873 F.3d at 745.  As Defendants do here, the defendants in *Flores* argued that

15  because under California law "the employment relationship between the state and its civil

16  service employees is governed by statute rather than contract, Plaintiffs cannot seek

17  recovery under section 1981."  *Id*. at 752.  The Ninth Circuit held "that California law

18  should not be read to bar public employees from bringing section 1981 claims in cases such

19  as this one."  *Id*.  Here, the circumstances are similar to *Flores*, and the Court follows Ninth

20  Circuit precedent.

21      Second, Defendants argue that Hendon's Complaint never alleges that either Senator

22  Hueso or Lopez ever deprived Hendon of a legally protected right on the basis of her race,

23  and thus both should be dismissed from Hendon's Section 1981 claim.  (MTD 12:18–13:3.)

24  Section 1981 prohibits discrimination in the making and enforcement of contracts by

25  reason of race, including employment relationships.  42 U.S.C. § 1981; *Flores*, 873 F.3d

26  at 752.  "To prevail, a plaintiff must initially plead and ultimately prove that, but for race,

27  [she] would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l*

28  *Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

The Complaint's allegations concerning race almost exclusively mention Molina-Rodriguez.  (*See* FAC ¶¶ 15–26.)  The Court concluded above that Hendon does not plausibly state a racial harassment claim against Senator Hueso.  The Court agrees that the Complaint similarly lacks allegations concerning Senator Hueso discriminating based on race.

Whether the Complaint includes enough allegations against Lopez to state a claim is a closer call.  (*See* FAC ¶¶ 29–30 (alleging Lopez gave Hendon, the only African American, a door-to-door recruiting assignment in an "extraordinarily dangerous" area that was not given to non-African American staff members and ignored her complaints that she was concerned about her safety).)  This federal discrimination claim does not have the same wrinkle regarding "personnel management decisions" as the state law harassment claim analyzed above.  And given the lenient pleading standard, the Court concludes there is enough to survive Lopez's Rule 12(b)(6) challenge.  It can reasonably be inferred from these facts that Lopez treated Hendon differently because of her race, leading to her constructive discharge.  Accordingly, the Court grants Defendants' request to dismiss Senator Hueso from the eighth cause of action with leave to amend but denies Defendants' request to dismiss Lopez.

\* \* \*

Defendants also bring a motion to strike Hendon's prayer for declaratory relief under Federal Rule of Civil Procedure 12(f).  (MTD 14:13–15.)  "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003).  "[The] motion . . . should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation.  If there is any doubt . . . the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted).  Defendants do not show a portion of Hendon's prayer should be stricken under this standard.  Hence, the Court denies the Motion to Strike.

21cv0505

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Hendon's Motion to Sever and Remand (ECF No. 4) and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss and Strike.  (ECF No. 3.)  The Court grants Defendants' request to dismiss Hendon's: (1) second cause of action against Senator Hueso and Lopez;  (2) sixth cause of action against all Defendants; (4) eighth cause of action to the same extent as her second and sixth claims; (5) seventh cause of action against Senator Hueso; and (6) ninth cause of action against all Defendants.  All dismissals are with leave to amend.  The Court otherwise denies the Motion to Dismiss.  Further, the Court denies the Motion to Strike.  If Hendon chooses to file a Second Amended Complaint, it must be filed no later than February 18, 2022.  If no Second Amended Complaint is filed, Defendants must file an answer no later than February 28, 2022.

**IT IS SO ORDERED.**


**DATED: February 4, 2022**

Hon. Cynthia Bashant
United States District Judge

21cv0505