UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAWN HENDON,<br><br>                    Plaintiff,<br><br>v.<br><br>CALIFORNIA STATE SENATE, et al.,<br><br>                    Defendants. | Case No.:  21cv0505-RSH-MDD<br><br>**ORDER ON DISCOVERY MOTIONS**<br><br>**[ECF Nos. 28 and 30]** |

This is an employment race and disability discrimination case that also alleges retaliation and sexual harassment.  Plaintiff Dawn Hendon brings ten claims against the California State Senate, three named individuals, and twenty Does.  (ECF No. 10 ¶ 14).  Plaintiff began working as a District Representative for Defendant Senator Ben Hueso at the California State Senate 40th district in Chula Vista, California in April 2018.  She alleges she was constructively terminated in September 2019.  (*Id.* ¶ 44).

Discovery closed November 14, 2022 (ECF No. 21), and Defendants' Motion for Summary Judgment is pending.  (ECF No. 29).  Plaintiff seeks to compel both (1) deposition testimony from Defendant Senator Hueso, and (2)

1 production of documents from Defendant the California State Senate. (ECF
2 Nos. 28, 30). Defendants oppose the motions. (ECF Nos. 28, 32). Both
3 parties seek sanctions against the other in connection with the motions to
4 compel. (*See* ECF No. 28 at 7, 19-20; ECF No. 32).

## LEGAL STANDARD

6 The Federal Rules of Civil Procedure authorize parties to obtain
7 discovery of "any nonprivileged matter that is relevant to any party's claim or
8 defense and proportional to the needs of the case. . . ." Fed. R. Civ. P.
9 26(b)(1). "Information within the scope of discovery need not be admissible in
10 evidence to be discoverable." *Id.* District courts have broad discretion to
11 limit discovery where the discovery sought is "unreasonably cumulative or
12 duplicative, or can be obtained from some other source that is more
13 convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

14 The party seeking to avoid discovery bears the burden of showing why
15 that discovery should not be permitted. *Blankenship v. Hearst Corp.*, 519
16 F.2d 418, 429 (9th Cir. 1975); *see also Carr v. State Farm Mut. Auto. Ins. Co.*,
17 312 F.R.D. 459, 469 (N.D. Tex. 2015) (concluding that the 2015 amendments
18 to discovery rules did not alter the allocation of burdens). The resisting party
19 must specifically detail the reasons why each request is irrelevant or
20 otherwise objectionable, and may not rely on boilerplate, generalized,
21 conclusory, or speculative arguments. *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D.
22 544, 553 (D. Nev. 2013). Arguments against discovery must be supported by
23 "specific examples and articulated reasoning." *E.E.O.C. v. Caesars Ent.*, 237
24 F.R.D. 428, 432 (D. Nev. 2006).

25 A court may deny a motion to compel when "failure to obtain the
26 requested documents is due to [the movant's] own lack of diligence." *See*
27 *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001). As to the

timing of a discovery motion, this Court's Chambers' Rules state:

> Any motion related to discovery disputes must be filed no later than thirty (30) days after the date upon which the event giving rise to the dispute occurred. . . For written discovery, the event giving rise to the discovery dispute is the date of service of the response, **not** the date on which counsel reach an impasse in meet and confer efforts.

Civ. Chambers Rule MDD § (V)(C)(2) (emphasis in original). Moreover,

> The aggrieved party must provide the opposing party a **reasonable opportunity** to contribute to the Joint Motion. Reasonableness depends upon the extent and complexity of the dispute. A <u>minimum</u> of seven (7) business days prior to the anticipated filing date of the Joint Motion is reasonable, but only barely, for a party to participate meaningfully in the preparation of the joint motion.
>
> An ex parte motion to compel only is appropriate when the opposing party, after being provided a reasonable opportunity to participate, refuses to participate in the joint motion. . . Ex parte motions to compel discovery from a party that do not contain a declaration certifying that at least the minimum reasonable opportunity to participate was provided to the opposing party will be rejected by the Court.

*Id.* § V(C)(3) and (V)(D) (emphasis provided).

### **Deposition Testimony**

Deposition testimony is largely governed by Rule 30 of the Federal Rules of Civil Procedure. Rule 30(d)(3) provides:

> during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. . . If the [objecting party] so demands, the deposition must be suspended for the time necessary to obtain an order.

Fed. R. Civ. P. 30(d)(3)(A). Parties may raise deposition objections pursuant to Rule 30(c)(2), which states in pertinent part:

> An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2). Instructing a deponent not to answer a question on any grounds not delineated in Rule 30(c)(2) can warrant sanctions under Rule 30(d)(2). *See Nguyen v. LVNV Funding, LLC, et al.*, No. 15cv0758-LAB-RBB, 2017 WL 951026, at *12 (S.D. Cal. March 10, 2017). Courts have found good cause to terminate a deposition, however, where irrelevant questioning continues and persists. *See Alexander v F.B.I.*, 186 F.R.D. 208, 213 (D.D.C. 1999).

**Production of Documents**

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). If the responding party chooses to produce responsive information, rather than allow for inspection, the production must be completed no later than the time specified in the request or another reasonable time specified in the response. *Id.*

## DISCUSSION

Plaintiff's discovery motions ask the Court to: (A) order Defendant Senator Ben Hueso ("Hueso") to answer a question from a line of inquiry that arose during his deposition; and (B) order Defendant the California State Senate ("the Senate") to respond to Request for Production ("RFP") No. 14, which seeks documents related to "any kind" of criticism toward Hueso's employees, excluding Plaintiff, from January 1, 2017 through December 31,

2020.  The Court first considers the deposition testimony at issue, then the document request; it denies both Plaintiff's motions to compel and sanctions Plaintiff's counsel as explained below.

> A. *Attorney's Fees are Warranted Against Plaintiff's Counsel for (i) Asking Persistent, Harassing Deposition Questions, and (ii) Failing to Adequately Meet and Confer*

### Brief Conclusion:  The Deposition Dispute

Plaintiff's counsel, Ms. Stacey Y. Mouton ("Mouton"), deposed Defendant Hueso on October 28, 2022.  The parties paused the deposition to call the undersigned about a conflict that ultimately led to the current joint motion.  There are several problems with Plaintiff's motion to compel deposition testimony, which the Court will summarize here and then address *seriatim*.

The first problem with Plaintiff's motion is that counsel seeks to compel an answer to a question Mouton never asked the deponent.  Second, when counsel called Chambers during the deposition, the Court warned Mouton that if she persisted in harassing and oppressive questions about a non-relevant subject matter, sanctions would issue.  Third, Plaintiff's counsel failed to adequately meet and confer in good faith during the deposition *and* prior to filing the motion to compel by:  (1) refusing to clarify a vague and confusing question she posed to the deponent; (2) drafting her motion and sending it to opposing counsel without first communicating she had an issue with the deposition testimony; and (3) refusing to consider Defendant's solutions unless opposing counsel was willing to pay her attorney's fees.

For those reasons, the joint motion regarding deposition testimony is resolved in Defendant's favor, and sanctions of attorney's fees shall enter against Plaintiff's counsel.

**Factual Background:  The Deposition Dispute & Joint Motion**

Before calling Chambers about their deposition dispute, Mouton asked Hueso eight questions about a 2014 "wet and reckless" driving offense,"[1] to which Hueso pled guilty.  (*See* ECF No. 28-4 [Hueso Tr. at 150-52]).  The defense raised a concern about whether such questions, as a course of conduct, tipped the scale on the slippery slope of harassing a deponent, as Plaintiff's employment with the senator did not begin until four years *after* the 2014 driving offense.  (*See id.*; *see also* ECF No. 10 [Am. Compl. ¶¶ 14, 41]).

Mouton ignored counsel's inquiry and continued with her questioning.  (*See* ECF No. 28-4 [Hueso Tr. at 152-53]).  She then asked six more questions about the 2014 offense, including:  "were there any terms and conditions set based off of your plea to a wet and reckless?"  (ECF No. 28-4 [Hueso Tr. at 154]).  At that point, defense counsel asked Mouton to explain the relevancy of her persistent questioning on that topic.  (*Id.*).  Mouton refused to engage in Defendant's repeated efforts to meet and confer, so the deponent's counsel instructed his client not to answer, and Mouton suggested counsel call the Court for instruction, pursuant to this Court's rules concerning deposition conflicts.  (*Id.*); *see also* Civ. Chambers Rules MDD § (V)(B).

During that call with the Court, the undersigned warned Plaintiff's counsel about persisting with harassing and oppressive questions about a non-relevant subject matter.  The Court also warned the deponent's counsel

---

[1] "Wet and reckless," also called "wet reckless," describes a conviction for reckless driving in violation of California Vehicle Code section 23103.5(a), pursuant to a plea agreement involving an initial charge of driving under the influence.

about the narrow grounds for objecting to deposition questions. The Court instructed both parties, in relevant part, as follows:

> The instruction not to answer has to be either based on privilege, a violation of court order, or unreasonable harassing, and here's the problem with this persisting in refusing to answer.
>
> It must result in a motion which I will hear, and if the refusal to answer is not justified, there will be sanctions. . . . I appreciate that this is not relevant . . . .
>
> My recommendation is let the answer be had . . . . It won't be admissible. I can't see how it could be in this case. It's certainly not relevant, but . . . under our rules that doesn't justify a refusal to answer. It does not—if you look at the rule the unreasonable harassing generally is not a single question, it's the course of conduct.
>
> So as I say you're taking [a] risk. There has to be a motion to compel brought or a motion [for] protective order brought following the refusal to answer. If you continue [down this] path I'll expect [a motion] within five days. And if I find that this was not justified, there's going to be a problem. . . .
>
> [I]f I find . . that plaintiff's persistence in this line of inquiry is, in fact, unreasonably harassing, there will be sanctions. So either way, if I see this as a motion, there will be sanctions. . . . ***[I]f it's a line of inquiry that persists in irrelevance and the counsel for plaintiff won't explain the connection of this to her case***, [Defendant] may have a point.

(ECF No. 28-4 [Hueso Tr. at 160-62]) (emphasis added).

After the Court's telephonic admonition, counsel returned to the deposition, and Plaintiff's counsel restated her question: "Were there any terms and conditions set as a result of your plea for wet and reckless?" (ECF No. 28 at 4 [Hueso Tr. at 163-65]). The deponent's counsel asked Mouton to meet and confer about whether that question was the end of her wet and

reckless inquiry, or if there were more questions.  (*Id.* [Hueso Tr. at 163-64]).  Defense counsel also asked Mouton to clarify whether she was asking the witness about conditions set by the court or by the Senate.  (*Id.* [Hueso Tr. at 164-65]).

Rather than answering counsel's question or responding to defense counsel's request for clarification, Plaintiff's counsel asked for a response to her question.  (*Id.* [Hueso Tr. at 165:5-6]).  Defense counsel instructed his client to answer the question as he understood it, which was what conditions the court imposed, not what the Senate may have imposed.  (*Id.*).  Hueso answered the question, stating that sanctions and penalties for his offense were common throughout the state, a matter of public record, and set by the court.  (*Id.*).  Plaintiff's counsel then asked the witness eleven additional questions on the same subject matter, which Hueso answered.  (*Id.* [Hueso Tr. at 166-67]).

Plaintiff's counsel *did not* ask Hueso whether the *Senate* placed any terms or conditions on him in connection with the wet and reckless plea.  (*Id.*).  The deposition concluded shortly thereafter, and Plaintiff's counsel initiated no further discussions with opposing counsel.  Defense counsel explains that if Mouton had raised an issue with Hueso's answers during the deposition, he was prepared to seek a protective order.  But, when she did not challenge any deposition answers, he did not do so.  (ECF No. 28 at 17-18 & n.3).

Three days later, on October 31, 2022 at 4:09 p.m., Mouton sent defense counsel a draft motion to compel via email seeking additional deposition testimony from Hueso about whether the Senate imposed any conditions on him after his wet and reckless plea.  (ECF No. 28-1 [Yeung Decl. ¶ 6]).  Mouton asked opposing counsel to complete his section of the joint motion

within 48 hours to comply with the Court's five-day deadline for filing such motions. (ECF No. 28-1 [Yeung Decl. ¶¶ 5-7]).

Defense counsel explained to Mouton that he believed his client had answered the question asked, and reminded Mouton of the requirement to meet and confer before filing a motion to compel. (ECF No. 28-1 [Yeung Decl. ¶ 7]). Mouton responded: "I'm pretty set on proceeding with the motion to compel," but she agreed to talk the next day to "get that part out of the way earlier rather than later." (*Id.* [Yeung Decl. ¶¶ 7-8]).

During a subsequent telephonic call, defense counsel offered two solutions: (1) Hueso could execute a declaration responding to her question under penalty of perjury; or (2) Hueso could supplement his testimony pursuant to Rule 30(e)(1)(B) of the Federal Rules of Civil Procedure. (*Id.* [Yeung Decl. ¶ 9]). Plaintiff's counsel would only accept a solution if Defendant paid some or all of her fees for having drafted the motion to compel. (*Id.*). Defendant rejected that condition, asserting that the federal rules justified his position and his client's responses during the deposition. (*Id.*).

Plaintiff now seeks sanctions of $1800 under Federal Rule of Civil Procedure 30(d)(2) based on defense counsel impeding, delaying, or frustrating a fair examination of Hueso in connection with a question that she never specifically asked. (*See* ECF No. 28 at 7). Plaintiff also seeks costs and fees to conduct another deposition of Hueso. (*Id.*).

Defendant objects, arguing the Court should sanction Plaintiff's counsel for: (1) impeding, delaying, and frustrating Hueso's deposition with harassing, persistent, irrelevant questions about a driving offense that occurred four years before Plaintiff was hired, pursuant to Federal Rule Civil Procedure 30(d)(2); and (2) failing to meet and confer during and after the

deposition pursuant to Federal Rule of Civil Procedure 37(a)(1) and this Court's Chambers' Rules § (V)(A).

### Analysis:  The Deposition Dispute

*(i)  Sanctions Against Plaintiff's Counsel are Warranted Because She Impeded, Delayed, and Frustrated Hueso's Deposition as a Result of Her Persistent, Harassing Questions*

Rule 30(d)(2) provides for sanctions against one who "impedes, delays or frustrates the fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2). Rule 30(d)(2) sanctions do not require a finding of bad faith.  *BNSF Ry. Co. v. San Joaquin Valley Rr. Co.*, No. 1:08-cv-01086-AWI-SMS, 2009 WL 3872043, at *3 (E.D. Cal. Nov. 17, 2009); *Manipoun v. Dibela*, No. 17-cv-02325-AJB-BGS, 2018 WL 5962674, at *2 (S.D. Cal. Nov. 13, 2018); *Mewborn v. Abbott Labs.*, No. CV 18-8732-DSF (PLAc), 2019 WL 8060095, at *8 (C.D. Cal. Oct. 7, 2019).  The rule "explicitly authorizes the court to impose the cost resulting from obstructive tactics that unreasonably prolong a deposition on the person engaged in such obstruction" and the "sanction may be imposed on a non-party witness as well as a party or attorney."  *See* Fed. R. Civ. P. 30 (advisory committee notes) (1993 Amendments).

"The sanctions under Rule 30(d)(2) 'may include attorney's fees incurred as a result of the improper conduct and the necessity of filing a motion with the Court.'"  *Lee v. Pep Boys-Manny Moe & Jack of California, et al.*, No. 12-cv-05064-JSC, 2015 WL 9268118, at *3 (N.D. Cal. Dec. 21, 2015) (citation omitted).  Rule 30(d)(2) sanctions are discretionary.  *Id.* (citing *Batts v. Cnty. of Santa Clara*, No. C 08-00286 JW, 2010 WL 545847, at *2 (N.D. Cal. Feb. 11, 2010). "Courts have imposed sanctions on attorneys for frustration [of] a deponent's examination and unnecessarily prolonging proceedings under Rule 30(d)(2)." *Id.* (citing *Morales v. Zondo, Inc.*, 204 F.R.D. 50, 57 (S.D.N.Y.

1  2001)).  "A magistrate judge has the authority to issue a sanction for dilatory
2  and obstructive tactics; such an order does not have a dispositive effect on the
3  case."  *BNSF Ry. Co.*, 2009 WL 3872043, at *3 (citation omitted).
4   As a threshold matter, the Court asserts that relevance is generally not
5  a proper ground on which to instruct a party not to answer a question.  *See,*
6  *e.g., In Re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 619 (D. Nev.
7  1998).  That was not the issue here.
8   Instead, Plaintiff's counsel repeatedly asked the deponent harassing,
9  frivolous, and oppressive questions about a topic the Court had already
10 warned was not relevant.  While the law permits counsel to explore
11 inadmissible topics during a deposition, Plaintiff's counsel took her line of
12 questioning too far.  Then she remained unwilling to confer about it with
13 counsel or clarify any connection between her claims and her questions, or
14 explain how much longer she intended to pursue those questions.
15 After calling the Court and returning to the deposition, Mouton asked
16 the deponent eleven more questions on the same wet and reckless topic, but
17 she neglected to ask the one question she nonetheless pursued in her motion
18 to compel.  That fact is fatal to her motion.  Moreover, Mouton's improper
19 conduct during the deposition, including her persistent harassing questions,
20 warrant sanctions against her because throughout the deposition and before
21 filing a motion to compel, she failed to adequately meet and confer with
22 opposing counsel as required by federal and local rules.
23   (ii)  <u>Sanctions Against Plaintiff's Counsel are Warranted Based On Her</u>
24       <u>Repeated Failure to Meet and Confer in Compliance with Federal,</u>
       <u>Local, and Chambers' Rules</u>
25
26  A motion to compel "must include a certification that the movant has in
27 good faith conferred or attempted to confer."  Fed. R. Civ. P. 37(a)(1); *see also*

S.D. Cal. Civ. L.R. 26.1(a). Additionally, this Court's Chambers' Rules state:

> Counsel must meet and confer on all issues before contacting the court. If counsel are located in the same district, the meet and confer must be in person. If counsel are located in different districts, then telephone or video conference may be used. Exchanging letters, facsimiles or emails does not satisfy the meet and confer requirement. A party found by the Court to have failed to participate or to participate meaningfully in a required meet and confer session, may be sanctioned.

Civ. Chambers Rules MDD § (V)(A). The failure to comply with the requirement to meet and confer in good faith may by itself be grounds for denial of a motion to compel. *See Robinson v. Potter*, 453 F.3d 990, 995 (8th Cir. 2006).

Mouton refused to communicate or engage with opposing counsel during the deposition. Then, she sought the Court's involvement, but she did not adhere to its guidance. Immediately after hearing from the Court, Mouton asked Hueso a vague question and refused to clarify its meaning. Neither the deponent, his counsel, nor this Court could reasonably conclude that Mouton's question was meant to elicit an answer about whether the Senate placed conditions on Hueso.

Mouton could have clarified the meaning of her question by asking a proper follow-up question, but she did not. If Mouton had an issue with Hueso's answer she should have raised it at the deposition, or properly met and conferred. Instead, she drafted and emailed a motion to compel, then acquiesced to a cursory meet and confer, "to get it out of the way." (ECF No. 28-1 [Yeung Decl. ¶ 8]).

A meet and confer is not a perfunctory obligation; it is designed to "lessen the burden on the court and reduce the unnecessary expenditure of resources by litigants, through the promotion of informal,

extrajudicial resolution of discovery disputes." *See Banks v. Freddie Mac*, No. 2:11-CV-00648-GMN, 2013 WL 1189995, at *1 (D. Nev. Mar. 21, 2013) (discussing requirements under Rule 37) (citation omitted). "In order to serve its purpose, parties must treat the informal negotiation process as a substitute for, and not simply a formal prerequisite to, judicial review of discovery disputes." *Id.*

Defendant's brief explains that Hueso's answer to the question not asked would have been: "no, there were no restrictions placed on him by the California State Senate." (ECF No. 28 at 19). That explanation reveals the plausible simplicity of resolving Mouton's issue without the Court's intervention. Yet, when the defense offered to provide an answer to the unasked question via declaration, Mouton refused to accept that solution unless Defendant paid her fees, adding insult to injury.

Accordingly, pursuant to Fed. R. Civ. P. 30(d)(2) and 37(a), as well as Chambers' Rules § (V) and Local Rule 26.1(a),[2] the Court awards reasonable attorney's fees to Defendant in the amount specified in counsel's declaration. (ECF No. 28-1 [Yeung Decl. ¶ 10]). The Court finds that Chris Moores' time to draft Defendant's portion of the motion to compel, *i.e.*, four hours, at a rate of $270/hour (or $1080), and Timothy Yeung's time to revise the motion, *i.e.*, 2.5 hours, at a rate of $375/hour (or $937.50) are reasonable fee amounts in this case. Plaintiff's counsel is ordered to pay Defendant Hueso $2017.50 in attorney's fees within 30 days of this Order.

---

[2] "The court shall entertain no motion pursuant to Rules 26 through 37, Fed. R. Civ. P., unless counsel shall have previously met and conferred concerning all disputed issues." Civ. L.R. 26.1(a).

Next, the Court considers Plaintiff's *ex parte* motion to compel the Senate's production of documents regarding a patently overbroad request, despite the Senate's offer of a reasonable alternative there as well. (*See* ECF Nos. 30, 32).

### B. <u>Attorney's Fees are Warranted Against Plaintiff's Counsel for Failing to Adequately Meet and Confer and Timely Serve or Move to Compel Defendant's Production of Documents</u>

## Factual Background:  The Non-Party Employee Files

Plaintiff's failure to properly meet and confer also characterizes her *ex parte* motion for production of documents.  (ECF No. 30).  A review of scheduling order deadlines is helpful.  On May 9, 2022, the initial Scheduling Order set the close of discovery on October 11, 2022.  (ECF No. 17).  The scheduling order established that all requests for production "must be served at least thirty (30) days prior to the established cutoff date so that responses thereto will be due on or before the cutoff date."  (*Id.*).  Four months into the five-month discovery period, Plaintiff served requests for production on September 16, 2022, which was already outside the scheduling order deadlines, as a response would not have been due until October 17, 2022, six days after discovery closed.

Then, with only three weeks remaining in discovery, Plaintiff sought an extension of 120 days to complete her discovery.  (ECF No. 20).  The Court denied her request in large part, admonishing Plaintiff's counsel for her delay, but permitting a limited extension of 30-days for discovery based on personal challenges counsel communicated to the Court.  (ECF No. 21).  The Court moved the discovery cut-off deadline to November 14, 2022, but under the Federal Rules of Civil Procedure, the discovery deadline technically fell on November 15, 2022 due to the federal holiday.  Fed. R. Civ. P. 6(a)(1)(C)

(deadline that falls on a legal holiday is continued to the end of the next day that is not a holiday or weekend).

The document request in dispute sought: "All DOCUMENTS of any kind criticizing the job performance of any of YOUR employees at Senator Hueso's office, excluding PLAINTIFF, from January 2, 2017, through December 31, 2020." (ECF No. 32-2 at 9). On October 14, 2022, Defendant timely objected to that request as follows:

> The term "criticizing the job performance" is vague, ambiguous, overbroad, unduly burdensome, and subject to subjective interpretation. Defendant further objects to the extent responsive documents may contain information protected by the right of privacy . . . [and] this request calls for production of documents which are not relevant to the subject matter of this case. **Defendant is willing to meet and confer with Plaintiff regarding how to appropriately narrow the terms of this request to address the basis for Defendant's objections**.

(*Id*.) (emphasis added). Plaintiff did not initiate the meet and confer process until the eve of the discovery deadline. On November 8, 2022, she requested a telephone call with defense counsel about "lingering" discovery issues, and they scheduled a call for November 10, 2022 at 9:30 a.m. (ECF No. 30-1 [Mouton Decl. ¶ 4]).

Defendant's main problem was that Plaintiff sought private, confidential employment records of non-party employees, and counsel explained that he would need to discuss production of those materials with his client, the Senate, before producing them. (ECF No. 32 at 4). Defense counsel asked Mouton to contact him if she felt a motion were required because he believed they could reach a solution without a motion. (*Id*.). Defense counsel was also working to finalize a motion for summary judgment in this case that was due the same day. (*Id*. [Moores Decl. ¶ 6]).

Mouton next emailed defense counsel on November 10, 2022 at 9:25 p.m., stating that she wanted to file a joint discovery motion. (*Id.* [Moores Decl. ¶ 7]). Defense counsel responded to her within the hour, reiterating his need to speak with this client and Plaintiff's delay in raising a timely dispute before the close of business that day. Defense counsel also explained his view of an insufficient meet and confer process regarding the disputed RFP. (*Id.*).

On Friday, November 11, 2022 both counsel had an all-day deposition of a key witness in this case, and because Monday was a holiday, defense counsel explained that he may not be able to resolve the privacy concerns immediately. (ECF No. 32-1 [Moores Decl. ¶¶ 4-5]). Moores did not refuse to produce documents, but instead expressed the need to speak with his client about privacy issues before he could respond. (*Id.*).

Plaintiff offered to limit her discovery request to performance reviews for seventeen employees who worked for Hueso's district office during the same time as Hendon. (ECF No. 30 at 4). Plaintiff argues those evaluations are relevant to her allegation that a supervisor refused to give her a timely performance evaluation, despite giving them to others during the relevant time-period. (ECF No. 30 at 5). Plaintiff also contends she needs to test the veracity of her supervisor's statement that "Dawn Hendon's performance feedback was not the only one delayed" due the supervisor's workload. (*Id.* at 6).

The defense suggested instead that they produce "a chart identifying the hire dates of District Representatives, with corresponding dates of each performance evaluation provided to those employees between 2017 and 2020." (ECF No. 32-1 [Moores Decl. ¶ 9]). Plaintiff persisted in attempting to obtain the evaluations themselves, rather than simply the dates of the evaluations, but the substance of the performance evaluations is not at issue.

## Analysis: The Non-Party Employee Files

Plaintiff's motion to compel the production of performance evaluations fails for several reasons. First, Plaintiff served the RFP too late for the defense to respond or object before the close of discovery. Fortunately for Plaintiff that deadline was later extended from October 11, 2022 to November 14, 2022. Yet still, having received objections on October 11, 2022, Plaintiff's counsel compounded her delays by failing to attempt to meet and confer until November 8, 2022, which was too late for the defense to have a reasonable amount of time to respond or participate in a joint motion in compliance with Chambers' Rules. Then, when they did confer, Plaintiff refused to accept a reasonable alternative to her overly broad document request.

Mouton's delays and her failure to properly meet and confer render her motion to compel without merit. Under Rule 37(a)(5), sanctions are appropriate unless the motion to compel is substantially justified or other circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5)(B) (If a motion to compel is denied, the court must require the movant to pay the party "who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees"). Mouton's actions were not substantially justified, nor is the Court aware of any circumstance that would make an award of fees unjust.

The Court finds that sanctions against Plaintiff's counsel are warranted. *See In re Baker*, 744 F.2d 1438, 1442 (10th Cir. 1984) ("If the fault lies with the attorney, that is where the impact of sanction should be lodged. If the fault lies with the clients, that is where the impact of the sanction should be lodged."). Counsel's rate of $270 per hour is reasonable, and four hours was a reasonable amount of time for Defendant's attorney to spend responding to Plaintiff's motion to compel. (ECF No. 32-1 [Moores

Decl. ¶ 11]).  Accordingly, Plaintiff's counsel shall pay the Defendant California State Senate $1080 in attorney fees as a sanction for the untimely and unwarranted *ex parte* motion to compel.

## CONCLUSION

The Joint Motion (ECF No. 28) is resolved in Defendant Hueso's favor, and Plaintiff's counsel is ordered to pay fees to Defendant Hueso in the amount of $2017.50, within 30 days of this Order.

Plaintiff's *Ex Parte* Motion to Compel Production of Documents (ECF No. 30) is **DENIED**.  Plaintiff's counsel is ordered to pay Defendant the California State Senate attorney's fees in the amount of $1080 within 30 days of this Order, in addition to the $2017.50 award of sanctions to Defendant Hueso, for a total of **$3097.50 in attorney's fees** against Ms. Mouton.

**IT IS SO ORDERED**.

Dated:   March 23, 2023

_____
Hon. Mitchell D. Dembin
United States Magistrate Judge